UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Zorica Loncar,<br><br>    Plaintiff<br><br>v.<br><br>Penn National Gaming, *et al*,<br><br>    Defendants | 2:13-cv-02218-JAD-GWF<br><br>**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [ECF 29]** |

Zorica Loncar sues defendants Penn National Gaming and LV Gaming Ventures, LLC[1] for interference and retaliation in violation of the Family and Medical Leave Act (FMLA).[2] She alleges that defendants demoted her to part-time employment and then fired her after she requested and was approved for medical leave. Defendants move for summary judgment, arguing that (1) Loncar has not provided any evidence to support her claims, (2) Loncar's retaliation claim is not sufficiently pled, and (3) Penn National Gaming is an improper defendant because it was not Loncar's employer for FMLA purposes. I find that Penn National Gaming was not Loncar's employer for FMLA purposes and thus dismiss both of her claims against that defendant. I also find that Loncar has not sufficiently stated a claim for retaliation and therefore dismiss that claim, too. But because I find that a reasonable jury could find in favor of Loncar on her interference claim against LV Gaming Ventures, that claim survives summary judgment.[3]

**Background**

For more than three years Loncar was a high-stakes table-games dealer for LV Gaming

---

[1] Penn National Gaming was the parent company of LV Gaming during Loncar's employment. ECF 28 at 11. Loncar also initially sued the M Resort Spa and Casino, but it was voluntarily dismissed before removal.

[2] 29 USC 2615.

[3] I find this motion suitable for disposition without oral argument. Nev. L.R. 79-2.

Ventures, which owned and operated the M Resort Spa and Casino.[4] At the end of 2012, LV Gaming determined that it needed to reduce the number of full-time dealers due to decreased revenue.[5] It adopted a point system to determine which full-time dealers would be reassigned to part-time status. Under the point system, each dealer would receive a score based on (1) their most recent performance review, (2) any disciplinary actions within the preceding six months, (3) attendance points, and (4) technical skills. All table-games dealers were ranked based on their scores. If more than one dealer received the same score, the more senior employee would prevail.[6]

In October[7] and December 2012, Loncar received identical performance reviews with an overall score of six.[8] Loncar was not alone, though; most dealers received identical scores and comments on these reviews.[9]

In November or December of 2012, Loncar told several co-workers that she suffered from pain in her hands and wrists.[10] At the beginning of January 2013, Loncar told a shift manager and the director of table games about her hand and wrist pain and stated that she might need to take time off for surgery.[11] Within days after relaying her concerns to management, Loncar received a written

---

[4] ECF 28 at 2. The parties dispute whether Loncar's employment ended on March 6th or March 7th 2013. ECF 29 at 3; ECF 34 at 2.

[5] ECF 29-2 at 28 ¶¶ 23–25.

[6] ECF 29 at 5.

[7] The October 2012 review was apparently intended to constitute Loncar's missed 2011 review. ECF 29-2 at 9 ¶¶ 3–13. Approximately 80% of employees received an October 2012 review in lieu of a missed 2011 review. Id. at 9 ¶¶ 17–20.

[8] ECF 29-2 at 14, 18.

[9] ECF 29-1 at 15 ¶¶ 22–25.

[10] ECF 34-1 at ¶ 7.

[11] Id.

warning for sleeping while sitting at a blackjack table;[12] she disputed the charge.[13] On February 7, 2013, Loncar received another written warning, this time for swearing during a pre-shift meeting.[14] According to Loncar, team members frequently swore at these meetings and did not receive write-ups.[15]

On February 20, 2013, Loncar submitted a request for leave under the Family Medical and Leave Act (FMLA); her request was approved on March 1st.[16] Loncar alleges that her January and February write-ups as well as her October and December 2012 evaluations were contrived in response to her complaints about her symptoms and request for FMLA leave. She alleges that defendants plotted to use these documents to lower her score and resulting rank so that she would be placed on the part-time list.[17]

The dealer rankings were completed later that month. Loncar received a total score of 13, which landed her at the top of the list of 24 dealers who would be moved to part-time.[18] After Loncar completed her shift on March 3, she was informed that she would be in the part-time employment pool and that she would need to attend a mandatory meeting three days later to bid for her shift. Loncar was upset by the news, so she took approved time off until bid day.[19]

On bid day, Loncar refused to choose a shift. Instead, she repeatedly questioned her

---

[12] ECF 29-2 at 20.

[13] *Id.*

[14] *Id.* at 22.

[15] ECF 34-1 at ¶ 7.

[16] ECF 29-4 at 18.

[17] ECF 34-1 at ¶ 13.

[18] ECF 29-3 at 2–6. The number of full-time dealers was capped at 97. ECF 35 at 4. After the 24 former full-time dealers were moved to part-time, the total number of part-time dealers was 65.

[19] ECF 29-1 at 24 ¶¶13–18.

placement on the part-time list.[20] HR personnel reassured Loncar that, due to her position near the top of the list, she might soon have an opportunity to go back to full-time.[21] Loncar still refused to choose a part-time shift and stated that she would resign instead.[22] HR then provided Loncar a resignation form. She signed her first name but apparently changed her mind and refused to complete the form. Loncar then repeatedly indicated that she did not wish to resign.[23] She left without completing the resignation form or choosing a part-time shift. The parties dispute whether Loncar was fired or voluntarily resigned.

When Loncar reported for her shift the following day, HR informed her that she had resigned and could not return to work.[24] Loncar responded that she had not resigned and wished to return to work.[25] She was told that she would receive an official decision from HR the next day. She did; she was told that the company would not take her back.[26]

Three days later, Loncar completed a dispute-resolution form requesting that her resignation be rescinded and her full-time employment be reinstated.[27] Loncar again stated she never intended to resign and that she had only signed her first name because she was emotionally distressed.[28] Loncar returned to the M Resort two weeks later to discuss her ranking and purported resignation.[29] During the 30-minute meeting, Loncar reiterated that she did not wish to resign, but she was again informed

---

[20] *Id.* at 24.

[21] *Id.* at 27 ¶¶ 4–6.

[22] *Id.* at 28 ¶¶ 18–23.

[23] *Id.* at 30 ¶¶ 21–23.

[24] *Id.* at 35 ¶¶ 17–18.

[25] *Id.* at 36 ¶¶ 12–15.

[26] *Id.* at ¶¶ 6–8.

[27] ECF 29 at 23.

[28] *Id.*

[29] ECF 29-2 at 33 ¶¶ 23–25.

that the company would not take her back.[30] After the meeting, Loncar was escorted off the property by security, given a notice of trespass, and told never to return.[31]

Loncar sues defendants under two theories of liability: interference with FMLA rights under 29 USC 2615(a)(1) and retaliation for exercising her FMLA rights under 29 USC 2615(a)(2).[32] Loncar alleges that defendants violated her FMLA rights by demoting and firing her after she requested medical leave. Defendants now move for summary judgment on both claims.

## Discussion

### A.  Summary Judgment Standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[33] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[34] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[35]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[36] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

---

[30] *Id.* at 36 ¶¶ 18–20; ECF 34-1 at 6 ¶ 20.

[31] ECF 34-1 at 7.

[32] ECF 1-1.

[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[34] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[35] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

evidentiary basis on which a reasonable fact finder could find in her favor.[37] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[38]

### B. The Family and Medical Leave Act

The Family and Medical Leave Act guarantees that an employee's act of taking medical leave will not result in a loss of job security or other adverse employment actions.[39] To prevail on a FMLA interference claim under § 2615(a)(1), an employee must show, by a preponderance of the evidence, that her taking or requesting FMLA-protected leave constituted a negative factor in the decision to terminate or take other adverse employment action against her.[40] By contrast, to prevail on a retaliation/discrimination claim under § 2615(a)(2), an employee must show that she was punished for opposing employer practices made unlawful by the FMLA.[41] "Termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review, and refusal to consider for promotion," are among those employment decisions that can constitute adverse employment action.[42]

### C. Penn National Gaming is not a proper defendant.

Defendants argue that summary judgment should be granted in favor of Penn National Gaming because it was not Loncar's employer for FMLA purposes.[43] Though Penn was the parent

---

[37] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[38] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[39] *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003).

[40] *Liu*, 347 F.3d at 1146. A plaintiff must also show that (1) she was an eligible employee, (2) the defendant was an employer subject to the FMLA, (3) she was entitled to leave under the FMLA, and (4) she gave the defendant-employer notice of her intent to take leave. The parties do not dispute any of these elements, so I consider only whether Loncar has provided evidence to show that her request for leave was a negative factor in LV Gaming's decisions against her.

[41] *Liu*, 347 F.3d at 1137.

[42] *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

[43] ECF 29 at 11–12.

company of LV Gaming during Loncar's employment, parent-company status alone does not give rise to FMLA liability. Loncar does not oppose defendants' motion on this point and agrees to dismiss Penn.

Defendants are correct that parent-company status alone is not sufficient to create FMLA liability.[44] To establish Penn as her employer, Loncar would have to show that Penn was a "joint" employer, which requires a showing that Penn exercised control over her working conditions.[45] According to defendants, Loncar has not conducted any discovery regarding whether Penn exercised control over her working conditions.[46] Because Loncar has offered no evidence to show that Penn was a joint employer and she has agreed to dismiss it from this case, Loncar's claims against Penn National Gaming are dismissed with prejudice.[47]

**D.  Loncar's retaliation claim fails because she has not shown that she was punished for opposing an unlawful employer practice.**

LV Gaming argues that Loncar's retaliation claim fails because she does not allege that it retaliated against her for opposing unlawful employment practices. Instead, she alleges merely that she was punished for exercising her FMLA right to request leave.[48] Loncar does not attempt to cure this defect. She simply and baldly responds that LV Gaming retaliated against her for "exercising her rights under the Act."[49]

---

[44] 29 CFR 825.104(c)(1).

[45] *See Moreau v. Air France*, 356 F.3d 942, 946–47 (9th Cir. 2004).

[46] *Id.*

[47] A court has discretion to grant dismissal of an action instead of entering judgment. *See Ambersbach v. Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit. Auth.*, 469 U.S. 528 (1985) (holding district court did not err in granting dismissal rather than judgment where defendant's 12(c) motion raised what was essentially a 12(b)(6) defense); *See also Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990) (holding district court acted within its discretion in converting a Rule 12(c) motion for judgment on the pleadings to a 12(b)(6) motion to dismiss for failure to state a claim); *Carter v. McConnell*, 2006 WL 279341, * 2 (N.D. Cal. Feb. 6, 2006) (construing defendant's motion for summary judgment as an unenumerated motion to dismiss for failure to exhaust).

[48] ECF 29 at 10.

[49] ECF 34 at 18.

When a plaintiff alleges retaliation for exercising her rights under the FMLA, courts in the Ninth Circuit construe the claim as one for interference under § 2615(a)(1).[50] Loncar's retaliation claim is properly analyzed as part of her interference claim. The allegations supporting each are nearly identical. Loncar does not allege that she protested any activity made unlawful under the FMLA, or that LV Gaming took any adverse employment action against her as a result. Nor does she offer any evidence that would support those contentions. With no genuine issues of fact to support a retaliation theory, I grant summary judgment on Loncar's claim for retaliation.

### E. Loncar's interference claim survives because whether her FMLA request constituted a negative factor in LV Gaming's decisions regarding her employment is genuinely disputed.

LV Gaming argues Loncar's interference claim must be dismissed because she has produced no evidence that her FMLA leave request or approval was a negative factor in any adverse action against her. According to LV Gaming, Loncar has produced no evidence to show that the request affected her ranking, which resulted in her demotion to part-time, or LV Gaming's decision not to rehire her after she resigned.[51]

Loncar responds that LV Gaming interfered with her FMLA rights by filing false and trivial write-ups against her and manipulating her performance reviews after she told LV Gaming managers that she would need to take FMLA leave.[52] Within six weeks of Loncar telling management about her condition and plan to take leave, she received two write-ups that she claims were pre-textual.[53]

A reasonable jury could find in Loncar's favor. Based on the time-line, a reasonable jury could conclude that LV Gaming generated the disciplinary write-ups in response to Loncar telling management that she was experiencing pain in her hands and wrists and might have to take time off

---

[50] *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2011) (stating that "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under 2615(a)(1), the provision governing 'Interference with Exercise of rights'").

[51] ECF 29 at 9.

[52] ECF 34 at 16.

[53] *Id.* at 17.

for surgery. She began receiving these allegedly undeserved write-ups only days after making these statements.[54] And these write-ups ultimately lowered her score and rank, which in turn caused her demotion to part-time status.[55] "Termination [or demotion] within the context of a reduction in force does not insulate an employer from liability for violating the FMLA," even where legitimate selection criteria is presented by the employer.[56] Thus, although LV Gaming has proffered neutral selection criteria in the form of its ranking system, this does not automatically insulate it from liability. A question of fact remains whether the write-ups and Loncar's demotion were motivated by Loncar's complaints about her symptoms and stated intention to request leave.

A question of fact also exists about whether Loncar's request for leave and its approval negatively impacted LV Gaming's decision to terminate her or its refusal to rescind her resignation (depending on how her separation from employment is ultimately characterized). Loncar's employment ceased only five or six[57] days after her FMLA request was approved.[58] Based on the close proximity of these events, a reasonable jury could conclude that Loncar exercising her FMLA rights constituted a negative factor in LV Gaming's decisions to discipline and demote her and its ultimate refusal to reinstate her employment. For these reasons, defendants' motion for summary judgment on Loncar's interference claim against LV Gaming is denied.

---

[54] ECF 34-1 at ¶ 7; ECF 29-2 at 20, 22.

[55] An undeserved negative performance review is alone sufficient for liability. *Brooks*, 29 F.3d at 928.

[56] *Liu*, 347 F.3d 1136, n. 11 (citing with approval *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167–68 (1st Cir. 1998)).

[57] The parties dispute whether Loncar's employment ended at the March 6, 2013, meeting or on March 7, 2013, when she was turned away from her shift. ECF 29-1 at 34 ¶¶ 4–13; ECF 34-1 at ¶ 18.

[58] ECF 29-4 at 18.

## Conclusion

Accordingly, it is HEREBY ORDERED that defendants' Motion for Summary Judgment [ECF 29] is GRANTED in part and DENIED in part:

1. It is **GRANTED** on all claims against Penn National Gaming; these claims are dismissed with prejudice and Penn National Gaming is terminated from this case.
2. It is **GRANTED** as to Loncar's FMLA retaliation claim against LV Gaming Ventures, LLC.
3. It is **DENIED** in all other respects.

This case proceeds on Loncar's single remaining claim against LV Gaming Ventures, LLC for interfering with Loncar's FMLA rights as alleged in her first cause of action.

IT IS FURTHER ORDERED that this case is referred to the magistrate judge for a settlement conference. The parties' obligation to file their joint pretrial order will be stayed until 15 days following the settlement conference.

Dated this 22nd day of September, 2015

_____
Jennifer A. Dorsey
United States District Judge